# IN THE UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COLLINS & AIKMAN CORPORATION, <u>et al.</u>[1] | ) Case No. 05-55927 (SWR) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) (Tax Identification #13-3489233) |
| | ) |
| COLLINS & AIKMAN CORPORATION, <u>et al.</u>, | ) Honorable Steven W. Rhodes |
| | ) |
| Plaintiffs, | ) Adv. Proc. No. _____ |
| | ) |
| v. | ) |
| | ) |
| GENERAL ELECTRIC CAPITAL CORPORATION and GE CAPITAL DE MEXICO, S. DE R. L. DE C.V., | ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

## VERIFIED COMPLAINT FOR DECLARATORY AND/OR INJUNCTIVE RELIEF

Plaintiffs Collins & Aikman *et al.*, the above-captioned debtors (collectively, the "Debtors" or "Collins & Aikman"), allege for their Complaint, upon knowledge of their own acts and upon information and belief as to all other matters, as follows:

---

[1] The Debtors in the jointly administered cases include: Collins & Aikman Corporation; Amco Convertible Fabrics, Inc., Case No. 05-55949; Becker Group, LLC (d/b/a/ Collins & Aikman Premier Mold), Case No. 05-55977; Brut Plastics, Inc., Case No. 05-55957; Collins & Aikman (Gibraltar) Limited, Case No. 05-55989; Collins & Aikman Accessory Mats, Inc. (f/k/a the Akro Corporation), Case No. 05-55952; Collins & Aikman Asset Services, Inc., Case No. 05-55959; Collins & Aikman Automotive (Argentina), Inc. (f/k/a Textron Automotive (Argentina), Inc.), Case No. 05-55965; Collins & Aikman Automotive (Asia), Inc. (f/k/a Textron Automotive (Asia), Inc.), Case No. 05-55991; Collins & Aikman Automotive Exteriors, Inc. (f/k/a Textron Automotive Exteriors, Inc.), Case No. 05-55958; Collins & Aikman Automotive Interiors, Inc. (f/k/a Textron Automotive Interiors, Inc.), Case No. 05-55956; Collins & Aikman Automotive International, Inc., Case No. 05-55980; Collins & Aikman Automotive International Services, Inc. (f/k/a Textron Automotive International Services, Inc.), Case No. 05-55985; Collins & Aikman Automotive Mats, LLC, Case No. 05-55969; Collins & Aikman Automotive Overseas Investment, Inc. (f/k/a Textron Automotive Overseas Investment, Inc.), Case No. 05-55978; Collins & Aikman Automotive Services, LLC, Case No. 05-55981; Collins & Aikman Canada Domestic Holding Company, Case No. 05-55930; Collins & Aikman Carpet & Acoustics (MI), Inc., Case No. 05-55982; Collins & Aikman Carpet & Acoustics (TN), Inc., Case No. 05-55984; Collins & Aikman Development Company, Case No. 05-55943; Collins & Aikman Europe, Inc., Case No. 05-55971; Collins & Aikman Fabrics, Inc. (d/b/a Joan Automotive Industries, Inc.), Case No. 05-55963; Collins & Aikman Intellimold, Inc. (d/b/a M&C Advanced Processes, Inc.), Case No. 05-55976; Collins & Aikman Interiors, Inc., Case No. 05-55970; Collins & Aikman International Corporation, Case No. 05-55951; Collins & Aikman Plastics, Inc., Case No. 05-55960; Collins & Aikman Products Co., Case No. 05-55932; Collins & Aikman Properties, Inc., Case No. 05-55964; Comet Acoustics, Inc., Case No. 05-55972; CW Management Corporation, Case No. 05-55979; Dura Convertible Systems, Inc., Case No. 05-55942; Gamble Development Company, Case No. 05-55974; JPS Automotive, Inc. (d/b/a PACJ, Inc.), Case No. 05-55935; New Baltimore Holdings, LLC, Case No. 05-55992; Owosso Thermal Forming, LLC, Case No. 05-55946; Southwest Laminates, Inc. (d/b/a Southwest Fabric Laminators Inc.), Case No. 05-55948; Wickes Asset Management, Inc., Case No. 05-55962; and Wickes Manufacturing Company, Case No. 05-55968.

## Nature of this Action

1. This proceeding is necessary to address the Defendants' recent threats to take action against one of the Debtors' non-Debtor subsidiaries, Collins & Aikman Automotive Hermosillo, S.A. de C.V. ("C&A Hermosillo"), that could irreparably harm the Debtors. In a nutshell, the Defendants notified C&A Hermosillo that they intend to commence actions against it on June 2, 2006, to foreclose on the assets, stock or other property interests of C&A Hermosillo.

2. While the Defendants' threats are "technically" aimed at a non-Debtor, if the Defendants are permitted to carry through on their threats, the impact and results would surely be felt by, and would be extremely harmful to, the Debtors and their reorganization efforts. The reason for this is simple and straightforward: C&A Hermosillo is not only owned and operated by the Debtors, but is the newest, most unique and single largest revenue-producing plant in the Debtors' entire family of companies.

3. Accordingly, if left unchecked, the Defendants' threatened conduct will adversely affect the Debtors' property and will obviously disrupt the Debtors' bankruptcy proceedings and reorganization efforts. To prevent that, the Debtors' First Claim for Relief (below) seeks an order declaring that any attempt by the Defendants, during the pendency of these bankruptcy proceedings, to foreclose on the assets, stock or other property interests of the Debtors or one of their non-Debtor subsidiaries, C&A Hermosillo, constitutes a violation of the automatic stay under section 362 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code").

4. Alternatively, by their Second Claim for Relief (below), the Debtors seek an order and judgment, pursuant to section 105 of the Bankruptcy Code, enjoining the Defendants from attempting to foreclose on the assets, stock or other property interests of the Debtors or one of

their non-Debtor subsidiaries, C&A Hermosillo, during the pendency of these bankruptcy proceedings.

### Jurisdiction and Venue

5. On May 17, 2005 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On the Petition Date, the Court entered an order jointly administering these cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (G) and (O).

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory bases for the relief requested herein are sections 105(a) and 362(a) of the Bankruptcy Code.

9. This adversary proceeding has been instituted in accordance with Bankruptcy Rule 7001.

10. No prior request for the relief requested herein has been made to this or any other court.

### The Parties

11. C&A Hermosillo is a wholly-owned subsidiary of Debtor Collins & Aikman International Corp., which is an indirect wholly-owned subsidiary of Debtor Collins & Aikman Corporation. The Debtors and their non-Debtor subsidiaries and affiliates — including C&A Hermosillo — are leading global suppliers of automotive components, systems and

modules to the world's largest vehicle manufacturers, including DaimlerChrysler AG, Ford Motor Company and General Motors Corporation.

12. On information and belief, Defendant General Electric Capital Corporation ("GECC") is a Delaware corporation with its principal place of business in Stamford, Connecticut.

13. On information and belief, Defendant GE Capital de Mexico, S. de R. L. de C.V. ("GE Mexico") is a Mexican limited liability company that was created by GECC for the special purpose of engaging in various financing and other transactions with the Debtors and C&A Hermosillo.

## Background

*The Importance of C&A Hermosillo to the Debtors*

14. The C&A Hermosillo facility manufactures interior parts, including instrument panels, door panels, center consoles and carpets for Ford Motor Company ("Ford"), one of the Debtors' largest and most important customers. In particular, the Ford products for which C&A Hermosillo manufactures interior parts are the Ford Fusion, Lincoln Zephyr and Mercury Milan automobiles.

15. C&A Hermosillo has a very close working relationship with Ford. Among other things, although part of the Debtors' family of companies, the C&A Hermosillo plant is considered a "captive" facility of Ford because it is located across the street from the Ford plant in which the Fusion, Zephyr and Milan automobiles are assembled. Likewise, all products manufactured in the C&A Hermosillo facility are delivered directly to that Ford assembly plant.

16. The C&A Hermosillo facility is the newest facility in the Debtors' family of companies. It uses the latest available technology, including the "TAC-Trim" technology to

4

make instrument panels. It is also the single largest revenue-producing plant in the Debtors' entire family of companies, earning approximately $300,000,000 in annual revenues.

17.     The operations of the C&A Hermosillo facility are managed by one of the Debtors' Michigan-based officers, Mr. Mikel de Irala. Among other things, Mr. de Irala, a Vice President of Advanced Manufacturing for one of the Debtors' plastic divisions, is involved in important personnel decisions at C&A Hermosillo and regularly conducts reviews of the plant's essential operating parameters, including safety, quality, cost performance, profitability and delivery.

*Transactions Among the Debtors, C&A Hermosillo and the Defendants*

18.     The Debtors and GECC have a history of engaging in various financing transactions. Consistent with that history, on information and belief, GECC created GE Mexico as a special purpose vehicle to provide financing to equip the C&A Hermosillo facility.

19.     In general terms, C&A Hermosillo and GE Mexico entered into a Construction Agency Agreement dated November 8, 2004, pursuant to which GE Mexico agreed to provide financing for the equipping of the facility. The parties also entered into a series of related agreements on or about that same date, including a Master Lease Agreement as well as a Stock Pledge Agreement pursuant to which the stock of C&A Hermosillo was pledged to GE Mexico to secure C&A Hermosillo's obligations under the Construction Agency Agreement and the related agreements.

20.     In addition to those agreements, the Debtors themselves directly entered into agreements with GE Mexico, including a Guaranty dated November 8, 2004, and an Indemnity Agreement of the same date.

5

21. Pursuant to the Guaranty, the Debtors, among other things, guaranteed C&A Hermosillo's payment and performance under the Construction Agency Agreement, the Master Lease Agreement and all transactions contemplated thereby.

*The Defendants' Retaliatory Threats to Commence Actions*

22. According to the Defendants, the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code by the Debtors allegedly constituted an Event of Default under the Construction Agency Agreement and purportedly gave rise to a number of rights and remedies for GE Mexico.

23. For a significant period of time, the parties — the Debtors, C&A Hermosillo, GECC and GE Mexico — entered into a series of limited waiver agreements in which GE Mexico temporarily waived its right to enforce various remedies against the Debtors and C&A Hermosillo.

24. Despite the fact that the standstill associated with the last limited waiver expired back on October 15, 2005, neither the Debtors nor C&A Hermosillo heard anything from GECC or GE Mexico about the intent of GECC or GE Mexico to seek to enforce remedies against C&A Hermosillo until May 19, 2006, some seven months later.

25. By letter dated May 19, 2006, GE Mexico delivered to C&A Hermosillo a "Notice of Termination" in which GE Mexico threatened "to commence any legal or other action" and "to exercise any or all rights and remedies provided for" by the Construction Agency Agreement and related agreements. (A copy of the Notice of Termination is attached hereto as **Exhibit A**.) These actions and remedies would include, among other things, attempts to foreclose upon the assets and capital stock of C&A Hermosillo.

26. On information and belief, GECC directed, caused and/or was involved in the issuance of the Notice of Termination by GE Mexico. On information and belief, GECC and its

6

employees, among other things, (a) created GE Mexico, (b) were involved in the negotiations for the underlying financing transactions and limited waivers and (c) have played and continue to play a role in the operations and/or dealings of GE Mexico. In fact, in correspondence between the parties, an employee of GECC has referred to GECC, rather than GE Mexico, as the "Owner" under the Construction Agency Agreement.

27. GECC and GE Mexico's decision to wait more than one year from the Petition Date, and more than seven months from the expiration of the last limited waiver agreement, before threatening to take action is not coincidental.

28. To the contrary, on April 19, 2006 — exactly one month prior to GE Mexico's Notice of Termination — the Debtors commenced an unrelated adversary proceeding against GECC seeking to recharacterize a putative sale-leaseback arrangement as a secured financing transaction [Adv. Proc. No. 06-04573; Docket No. 1].

29. On May 10, 2006, the Debtors and GECC had an argument before the Court on this unrelated adversary proceeding. At that time, the parties were ordered to make key submissions to the Court no later than May 25, 2006, so that the Court may determine whether the Debtors are obligated to make the so-called "lease payments" until the underlying merits of that unrelated recharacterization action are decided. The Notice of Termination came about one week after the hearing with the Court and one week before the submissions were due on that unrelated adversary proceeding.

30. Upon information and belief, the issuance of the Notice of Termination and the latest threats by GE Mexico against C&A Hermosillo were orchestrated by GECC either as retaliation for the Debtors commencing an action against GECC or as a means of applying additional pressure on the Debtors in connection with that unrelated adversary proceeding against GECC.

7

**First Claim For Relief**
**(Declaratory Relief Pursuant to 11 U.S.C. § 362(a)(1))**

31. The allegations in the foregoing paragraphs are incorporated by reference as though fully set forth herein.

32. Upon the filing of a bankruptcy petition, section 362(a) of the Bankruptcy Code operates automatically to stay, among other actions, "the commencement or continuation . . . of a . . . proceeding against the debtor . . . or to recover a claim against the debtor." 11 U.S.C. § 362(a)(1).

33. Section 362(a) also stays "any action to obtain possession of property of the estate," "any act to create, perfect, or enforce any lien against any property of the estate" and "any act to collect, assess, or recover a claim against the debtor." 11 U.S.C. § 362(a)(3), (4), (6).

34. There is an undeniable affiliation, importance and identity of interests between the Debtors and C&A Hermosillo. Among other things,

(a) C&A Hermosillo is a wholly-owned subsidiary of the Debtors and is an integral part of the Debtors' family of companies and operating plants;

(b) C&A Hermosillo is the newest, most technologically advanced, and largest revenue generating-plant of the Debtors;

(c) C&A Hermosillo is a captive facility of, and works closely with, Ford, one of the Debtors largest customers; and

(d) The management operations of C&A Hermosillo are handled by the Debtors and one of their US-based officers.

35. As reflected in its Notice of Termination, GE Mexico has threatened to commence actions and seek remedies against C&A Hermosillo, including foreclosing on assets, stock or other property interests of C&A Hermosillo.

36. Application or extension of the automatic stay to the threatened conduct by GECC and/or GE Mexico is necessary because the assets, stock and customer relationships of C&A Hermosillo that are at risk are either property of the Debtors, in whole or in part, or, at the

8

very least, are intricately intertwined with, and an important part of, the Debtors' property and reorganization efforts.

37. Given the importance of the C&A Hermosillo operations to the Debtors' businesses, including C&A Hermosillo's significant contributions to the Debtors' revenues and its close working relationship with Ford, any threat to or action against C&A Hermosillo would cause irreparable harm to the Debtors by seriously undermining the Debtors' businesses and impairing their reorganization efforts.

38. In addition, given the importance of the C&A Hermosillo plant to the Debtors' businesses, together with the fact that the Debtors and their officers play an active role in managing the operations of the C&A Hermosillo plant, the threatened conduct by GECC and GE Mexico requires extensive time, response and attention from the Debtors and their officers and, therefore, greatly interferes with the Debtors' ability to focus on their chapter 11 cases and to devote the time and resources needed to pursue a successful plan of reorganization.

39. Accordingly, because any attempt by GECC and/or GE Mexico to take action with respect to any assets, stock or other property interests of C&A Hermosillo necessarily implicates property of the Debtors, interferes with and frustrates the Debtors' chapter 11 cases and reorganization efforts, and/or is purely retaliatory for the Debtors' commencement of an unrelated adversary proceeding against GECC, the Debtors are entitled to an order declaring that any such conduct is prohibited as a matter of law and constitutes a violation of the automatic stay of section 362 applicable in the Debtors' chapter 11 cases.

### Second Claim For Relief
### (Injunctive Relief Pursuant to 11 U.S.C. § 105)

40. The allegations in the foregoing paragraphs are incorporated by reference as though fully set forth herein.

9

41. Section 105(a) of the Bankruptcy Code authorizes and empowers this Court to issue any orders that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the Debtors' chapter 11 cases, aid in the preservation of the assets of the Debtors' estates and aid in the promulgation and confirmation of a chapter 11 plan that maximizes recovery to all of the Debtors' creditors.

42. Pursuant to section 105(a), this Court may enjoin actions against third parties other than the Debtors where necessary to prevent an adverse impact upon the Debtors' estates or to assure the orderly administration of the Debtors' chapter 11 cases.

43. If the threats and attempts by GECC or GE Mexico to take action with respect to the assets, stock or other property interests of C&A Hermosillo or the Debtors are not automatically stayed under section 362(a)(1) of the Bankruptcy Code as requested in the Debtors' First Claim for Relief, then the Debtors are entitled to an order pursuant to section 105 enjoining such conduct during the pendency of the Debtors' chapter 11 cases.

44. Among other things, the requested injunction is warranted and appropriate to protect the Debtors' ability to reorganize in a timely and effective manner. An injunction is further warranted because (a) there is a substantial likelihood that the Debtors will prevail and be able to reorganize in a timely and effective manner if injunctive relief is granted, (b) absent an injunction the Debtors would be irreparably harmed for all of the reasons set forth above and (c) an injunction is in the public interest.

45. The issuance of an injunction pursuant to section 105 under the circumstances presented here would promote the public interest by complying with the Congressional purpose underlying the automatic stay — preserving the status quo and affording the Debtors a limited period of time to focus their efforts, attention and resources on reorganization.

46. Allowing the Debtors to focus on a successful reorganization further serves the public interest because the Debtors and their non-debtor subsidiaries and affiliates, including C&A Hermosillo, are leading global suppliers of automotive components, systems and modules to all of the world's largest vehicle manufacturers, including DaimlerChrysler AG, Ford and General Motors Corporation. In fact, the Debtors manufacture products that are included in approximately 90% of the vehicles produced by these manufacturers.

WHEREFORE, the Debtors respectfully request judgment as follows:

(a) On their First Claim for Relief, an order declaring that any attempt by GECC, GE Mexico or any other Entity (as defined in section 101 of the Bankruptcy Code) to take action with respect to any assets, stock or other property interests of the Debtors and one of its non-Debtor subsidiaries, C&A Hermosillo, during the pendency of these chapter 11 cases constitutes a violation of the automatic stay of section 362;

(b) On their Second Claim for Relief, in the event that the Defendants' threatened conduct described herein is not found to constitute a violation of the automatic stay, issuing an injunction in favor of the Debtors and enjoining GECC, GE Mexico and any other Entity from taking action with respect to the assets, stock or other property interests of the Debtors and one of its non-Debtor subsidiaries, C&A Hermosillo, during the pendency of these chapter 11 cases; and

(c) Such other and further relief as this Court deems just and appropriate.

Dated: May 31, 2006                    **KIRKLAND & ELLIS LLP**

*/s/ Marc J. Carmel*
Richard M. Cieri (NY RC 6062)
Joseph Serino, Jr. (NY JS 9911)
Matthew Solum (NY MS 1616)
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

-and-

David L. Eaton (IL 3122303)
Ray C. Schrock (IL 6257005)
Marc J. Carmel (IL 6272032)
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

-and-

**CARSON FISCHER, P.L.C.**

Joseph M. Fischer (P13452)
4111 West Andover Road
West - Second Floor
Bloomfield Hills, Michigan 48302
Telephone: (248) 644-4840
Facsimile: (248) 644-1832

Co-Counsel for the Debtors

# VERIFICATION

STATE OF MICHIGAN )
)
COUNTY OF OAKLAND )

    Mikel de Irala being duly sworn, deposes and states:

1. I am the vice president of advanced manufacturing for the plastics division of debtor Collins & Aikman Products Co., which is a subsidiary of debtor Collins & Aikman Corp., plaintiff in this adversary proceeding, and I am authorized to make this verification for and on its behalf, and I make this verification for that reason.

2. I have read the foregoing Verified Complaint and know its contents.

3. I am generally familiar with the day-to-day operations, business and financial affairs and books and records of Collins & Aikman Corp. and its affiliates and subsidiaries.

4. The facts alleged in the Verified Complaint are true and correct to the best of my knowledge, information, and belief.

Dated: May 30, 2006

                                                                     _____
                                                                       Mikel de Irala

Subscribed and sworn to
before me this 31st day of
May, 2006

_____
Notary Public

PAMELA J. LOURIM
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES Feb 11, 2013
ACTING IN COUNTY OF Oakland