# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COLLINS & AIKMAN CORPORATION, <u>et al.</u>[1] | ) | Case No. 05-55927 (SWR) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | (Tax Identification #13-3489233) |
| | ) | |
| COLLINS & AIKMAN CORPORATION, <u>et al.</u>, | ) | Honorable Steven W. Rhodes |
| | ) | |
| Plaintiffs, | ) | Adv. Proc. No. 06-04750-swr |
| | ) | |
| v. | ) | |
| | ) | |
| GENERAL ELECTRIC CAPITAL CORPORATION and GE CAPITAL DE MEXICO, S. DE R. L. DE C.V., | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEBTORS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

[1] The Debtors in the jointly administered cases include: Collins & Aikman Corporation; Amco Convertible Fabrics, Inc., Case No. 05-55949; Becker Group, LLC (d/b/a/ Collins & Aikman Premier Mold), Case No. 05-55977; Brut Plastics, Inc., Case No. 05-55957; Collins & Aikman (Gibraltar) Limited, Case No. 05-55989; Collins & Aikman Accessory Mats, Inc. (f/k/a the Akro Corporation), Case No. 05-55952; Collins & Aikman Asset Services, Inc., Case No. 05-55959; Collins & Aikman Automotive (Argentina), Inc. (f/k/a Textron Automotive (Argentina), Inc.), Case No. 05-55965; Collins & Aikman Automotive (Asia), Inc. (f/k/a Textron Automotive (Asia), Inc.), Case No. 05-55991; Collins & Aikman Automotive Exteriors, Inc. (f/k/a Textron Automotive Exteriors, Inc.), Case No. 05-55958; Collins & Aikman Automotive Interiors, Inc. (f/k/a Textron Automotive Interiors, Inc.), Case No. 05-55956; Collins & Aikman Automotive International, Inc., Case No. 05-55980; Collins & Aikman Automotive International Services, Inc. (f/k/a Textron Automotive International Services, Inc.), Case No. 05-55985; Collins & Aikman Automotive Mats, LLC, Case No. 05-55969; Collins & Aikman Automotive Overseas Investment, Inc. (f/k/a Textron Automotive Overseas Investment, Inc.), Case No. 05-55978; Collins & Aikman Automotive Services, LLC, Case No. 05-55981; Collins & Aikman Canada Domestic Holding Company, Case No. 05-55930; Collins & Aikman Carpet & Acoustics (MI), Inc., Case No. 05-55982; Collins & Aikman Carpet & Acoustics (TN), Inc., Case No. 05-55984; Collins & Aikman Development Company, Case No. 05-55943; Collins & Aikman Europe, Inc., Case No. 05-55971; Collins & Aikman Fabrics, Inc. (d/b/a Joan Automotive Industries, Inc.), Case No. 05-55963; Collins & Aikman Intellimold, Inc. (d/b/a M&C Advanced Processes, Inc.), Case No. 05-55976; Collins & Aikman Interiors, Inc., Case No. 05-55970; Collins & Aikman International Corporation, Case No. 05-55951; Collins & Aikman Plastics, Inc., Case No. 05-55960; Collins & Aikman Products Co., Case No. 05-55932; Collins & Aikman Properties, Inc., Case No. 05-55964; Comet Acoustics, Inc., Case No. 05-55972; CW Management Corporation, Case No. 05-55979; Dura Convertible Systems, Inc., Case No. 05-55942; Gamble Development Company, Case No. 05-55974; JPS Automotive, Inc. (d/b/a PACJ, Inc.), Case No. 05-55935; New Baltimore Holdings, LLC, Case No. 05-55992; Owosso Thermal Forming, LLC, Case No. 05-55946; Southwest Laminates, Inc. (d/b/a Southwest Fabric Laminators Inc.), Case No. 05-55948; Wickes Asset Management, Inc., Case No. 05-55962; and Wickes Manufacturing Company, Case No. 05-55968.

The above-captioned debtors and Plaintiffs (collectively, the "Debtors") respectfully move this Court for a temporary restraining order and preliminary injunction against Defendants GE Capital de Mexico, S. de R. L. de C.V. ("GE Mexico") and General Electric Capital Corporation ("GECC," and with GE Mexico, the "Defendants" or "GE") pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedures and 11 U.S.C. §§ 362(a) and 105(a).

## PRELIMINARY STATEMENT

The Debtors commenced this adversary proceeding to address the Defendants' recent threats to take action against one of the Debtors' non-Debtor subsidiaries, Collins & Aikman Automotive Hermosillo, S.A. de C.V. ("C&A Hermosillo"). In particular, the Defendants have threatened to foreclose on the stock, equipment and other assets of C&A Hermosillo as early as June 2, 2006. As discussed below, despite the fact that these threats are "technically" aimed at a non-Debtor, the Defendants' threatened conduct, if carried out, will irreparably harm the estates, bankruptcy proceedings, and reorganization efforts of the Debtors. This so because the entity targeted by the Defendants — C&A Hermosillo — is not only wholly-owned and operated by the Debtors, but is the newest, most unique and single largest revenue-producing plant in the Debtors' entire family of companies.

By this motion, the Debtors are not attempting to obtain substantive relief or to deny the Defendants their day in court. To the contrary, the Debtors ask only that the status quo be preserved for a limited period of time. More specifically, the Debtors ask that the Defendants be temporarily or preliminarily enjoined from executing on their threats against C&A Hermosillo for such limited time as is necessary to allow this Court to consider the merits of the Debtors' underlying claims for relief: namely, that the Defendants' threatened conduct constitutes a violation of the automatic stay of section 362 of the Bankruptcy Code, or, in the alternative, that

the Defendants should be enjoined from carrying out the threatened conduct during the pendency of these chapter 11 cases pursuant to section 105 of the Bankruptcy Code.

As discussed below, the Debtors are entitled to temporary or preliminary injunctive relief because (a) the Debtors are likely to succeed on the merits of their underlying claims, (b) the Debtors' estates, businesses, and reorganization efforts will be irreparably harmed absent such limited injunctive relief, (c) the injunctive relief requested will promote the public interest in the successful reorganization of troubled companies as well as the public's interest in the automotive products manufactured by the Debtors, and (d) the balance of hardships in this case weighs decidedly in favor of the granting of injunctive relief.

## BACKGROUND

C&A Hermosillo is a wholly-owned subsidiary of Collins & Aikman International Corp., one of the Debtors and the indirect subsidiary of Debtor Collins & Aikman Corporation. The C&A Hermosillo facility manufactures interior parts, including instrument panels, door panels, center consoles, and carpets, for Ford Motor Company ("Ford"), one of the Debtors' largest and most important customers. (Verified Complaint dated May 31, 2006 ("Compl."), at ¶ 14.)  Specifically, C&A Hermosillo manufactures interior parts for the Ford Fusion, Lincoln Zephyr, and Mercury Milan automobiles. (Compl., at ¶ 14.)  As a result, C&A Hermosillo has a very close working relationship with Ford and, in fact, is considered a "captive" facility because it is located directly across the street from the Ford plant in which the Fusion, Zephyr, and Milan automobiles are assembled. (Compl., at ¶ 15.)

The C&A Hermosillo plant is considered the "crown jewel" of the Debtors' various operating facilities. (Compl., at ¶ 16.)  It is the newest facility in the Debtors' family of companies. (Compl., at ¶ 16.)  It uses the latest available technology, including the "TAC-Trim" technology to make instrument panels.  (Compl., at ¶ 16.)    And, most significantly,

3

C&A Hermosillo earns approximately $300 million in annual revenues, making it the Debtors' single largest revenue-producing plant. (Compl., at ¶ 16.)

Given its importance to the Debtors, the Debtors have appointed one of its Michigan-based officers, Mr. Mikel de Irala, to manage the operations of the C&A Hermosillo facility. (Compl., at ¶ 17.) At C&A Hermosillo, Mr. de Irala, a Vice President of Operations for one of the Debtors' plastic divisions, is involved in important personnel decisions and regularly conducts reviews of essential operating parameters, including safety, quality, cost performance, profitability, and delivery. (Compl., at ¶ 17.)

In or about 2004, the Defendants agreed to provide financing to the Debtors to equip the C&A Hermosillo plant (the "Financing"). (Compl., at ¶¶ 18-21.) To that end, GECC formed a special purpose vehicle, GE Mexico, to provide the Financing. (Compl., at ¶ 18.) The financing terms were memorialized in a Construction Agency Agreement between C&A Hermosillo and GE Mexico dated November 8, 2004. (Compl., at ¶ 19.) The parties also entered into a series of related agreements on or about that same date, including a Master Lease Agreement as well as a Stock Pledge Agreement pursuant to which the stock of C&A Hermosillo was pledged to GE Mexico to secure C&A Hermosillo's obligations under the Construction Agency Agreement and the related agreements. (Compl., at ¶ 19.)

In addition, Debtor Collins & Aikman Products Co. ("C&A Products"), which is the indirect parent of C&A Hermosillo, entered into a number of agreements with GE Mexico related to the Financing, including a guaranty dated November 8, 2004 (the "Guaranty") and an indemnity agreement of the same date (the "Indemnity"). (Compl., at ¶ 20.) Pursuant to the Guaranty and the Indemnity, C&A Products, among other things, guaranteed C&A Hermosillo's payment and performance under the Construction Agency Agreement, the Master Lease Agreement and all transactions contemplated thereby. (Compl., at ¶ 21.)

4

According to the Defendants, the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code by the Debtors on May 17, 2005 (the "Petition Date") in the United States Bankruptcy Court for the Eastern District of Michigan, constituted an Event of Default under the Construction Agency Agreement and purportedly gave rise to a number of rights and remedies for GE Mexico and/or GECC. (Compl., at ¶ 22.) Initially, all of the parties involved, including the Debtors, C&A Hermosillo, GECC, and GE Mexico, negotiated and/or entered into a series of limited waiver agreements in which the Defendants temporarily waived their claimed rights to enforce various remedies against the Debtors or C&A Hermosillo. (Compl., at ¶ 23.) The last of those limited waiver agreements expired more than seven months ago — on October 15, 2005. (Compl., at ¶ 24.) Over the ensuing seven months, despite the fact that no waiver agreement was in place, neither the Debtors nor C&A Hermosillo heard anything from GECC or GE Mexico about their intent to enforce remedies against the Debtors or C&A Hermosillo. (Compl., at ¶ 24.)

On April 19, 2006, the Debtors commenced an adversary proceeding against GECC, in an unrelated matter. In that matter, the Debtors are seeking to recharacterize a putative sale-leaseback arrangement as a secured financing transaction [Adv. Proc. No. 06-04573; Docket No. 1].

On May 19, 2006 — exactly one month after the commencement of the Debtors' adversary proceeding and more than seven months after expiration of the last limited waiver — GE Mexico delivered a "Notice of Termination" to C&A Hermosillo in which it threatened "to commence any legal or other action" and "to exercise any or all rights and remedies provided for" by the Construction Agency Agreement and related agreements. (Compl., at ¶ 25 and Exhibit A.) These actions and remedies would include, among other things, attempts to foreclose upon the assets and capital stock of the crown jewel of the Debtors' enterprise:

5

C&A Hermosillo. (Compl., at ¶ 25.) The Defendants threatened to commence such action as early as June 2, 2006. (Compl., at Exhibit A.)

The motivation behind Defendants' May 19, 2006 Notice of Termination is obvious: it is retaliation for the Debtors commencing an action against GECC and is designed as a means of applying additional pressure on the Debtors in connection with that unrelated adversary proceeding. Indeed, the ability of GECC to control the conduct of GE Mexico is evidenced not only by the fact that GECC created GE Mexico as a special purpose vehicle and has been intimately involved in the Financing and waiver negotiations, but also by the fact that even GE employees refer to GECC as the "owner" under the Construction Agency Agreement. (Compl., at ¶ 26)

In response to the Defendants' Notice of Termination, the Debtors promptly commenced this adversary proceeding asserting two claims for relief: first, that the Defendants' threatened conduct violates the automatic stay of section 362(a)(1) applicable to these chapter 11 cases; and, second, in the alternative, that the Defendants' threatened conduct should be enjoined pursuant to section 105 of the Bankruptcy Code. The Debtors filed this motion for temporary and preliminary injunctive relief on the same day.

## ARGUMENT

### THE DEBTORS ARE ENTITLED TO TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF.

In determining whether to issue a temporary restraining order or preliminary injunction under Bankruptcy Rule 7065, the court must weigh four factors: (1) the likelihood that the moving party will succeed on the merits; (2) whether the moving party will suffer irreparable harm in the absence of an injunction; (3) whether an injunction will cause substantial harm to others; and (4) whether an injunction will serve the public interest. *Michigan Bell Telephone Company v. Engler*, 257 F.3d 587 (6th Cir. 2001); *Basicomputer Corp. v. Scott*, 973

K&E 11164713.8

06-04750-swr    Doc 5    Filed 05/31/06    Entered 05/31/06 16:01:38    Page 6 of 18

F.2d 507, 511 (6th Cir. 1992); *In re DeLorean Motor Corp.*, 755 F.2d 223, 1229 (6th Cir. 1985); *In re Shelly's, Inc.*, 87 B.R. 931, 935 (Bankr. S.D. Ohio 1988) (noting that standards for preliminary injunction and temporary restraining order are the same in the Sixth Circuit). None of these factors is determinative, but each should be taken into consideration. *See DeLorean Motor*, 755 F.2d at 1229; *see also Eagle-Pitcher*, 963 F.2d at 858 (these factors are "not meant to be rigid and unbending requirements.").

More specifically, in the context of a chapter 11 case, a preliminary injunction — and therefore a temporary restraining order as well — should be issued "where there is a showing that the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceedings. . . ." *In re Alert Holdings, Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992). As discussed below, a weighing of the four relevant factors leaves no doubt that the Debtors are entitled to the requested injunctive relief.

**I.      The Debtors Are Likely to Succeed on the Merits of Their Claims.**

**A.      The Defendants' Conduct, or Threatened Conduct, Violates the Automatic Stay.**

The Debtors are likely to succeed on their first claim for relief because it is clear that the Defendants' conduct and threatened conduct violates the protections of the automatic stay of section 362 applicable to these chapter 11 cases. Indeed, once a debtor has filed for bankruptcy protection, section 362 acts to automatically stay:

> (1) the commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . .

7

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; . . .

11 U.S.C. § 362(a)(1), (3) and (6) (2005).

The United States Supreme Court recognizes "the automatic stay provision of the Bankruptcy Code [as] one of the fundamental debtor protections provided by the bankruptcy laws." *Mid-Atlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986); *see also In re Javens*, 107 F.3d 359, 363 (6th Cir. 1997); *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) (noting that the "scope of the automatic stay is broad"). It is intended "to allow the bankruptcy court to centralize all disputes concerning property of a debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *S.E.C. v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) (citation omitted). The automatic stay is designed to protect the interests of both debtors and creditors alike by "preventing particular creditors from acting unilaterally to obtain payment from a debtor to the detriment of other creditors." *McCartney*, 106 F.3d at 509 (citing *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991)).

Of particular significance here is the fact that, in addition to staying actions against debtors, section 362(a)(1) has also been held to stay actions against non-debtors, such as C&A Hermosillo. *A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986) ("*Robbins I*"). This is the case whenever "there is such identity [of interest] between the debtor and the [non-debtor] that a judgment against the [non-debtor] will in effect be a judgment or finding against the debtor." *Id.* at 510 (staying actions against the non-debtor because a deficiency judgment would have implicated the debtor's estate) (citation omitted); *accord Queenie Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003) (staying action against debtor's wholly-owned subsidiary); *Robbins I*, 788 F.2d at 999 (when there is such an identity of

8

interest, "the debtor may be said to be the real party defendant and a judgment against a third party would in effect be a judgment against the debtor").

### 1. Any Action Against C&A Hermosillo Will Adversely Impact the Debtors' Estates.

The Debtors are likely to succeed on their claim that the Defendants' threatened conduct is subject to the automatic stay because the target of those threats — the Debtors' wholly-owned C&A Hermosillo manufacturing facility — is critical to the Debtors' business operations. *Queenie Ltd.*, 321 F.3d at 288; *cf. Badalament, Inc. v. Mel-O-Ripe Banana Brands, Ltd.*, 265 B.R. 732, 738 (E.D. Mich. 2001) (action against non-debtor president of debtor is stayed under Canadian bankruptcy act just as it would be under section 362 of the Bankruptcy Code).

The case of *Queenie Ltd. v. Nygard Int'l*, 321 F.3d 282, is directly on point. In *Queenie*, the United States Court of Appeals for the Second Circuit held that the automatic stay applies to a non-debtor subsidiary "because it is wholly owned by [the debtor], and adjudication of a claim against the [subsidiary] will have an immediate adverse economic impact on [the debtor]." *Id.* at 288. The same is true here. If the Defendants are permitted to follow through on their threats against C&A Hermosillo, which is a wholly-owned subsidiary of the Debtors, the adverse economic impact to the Debtors would be both immediate and severe. Among other things, the C&A Hermosillo plant is the largest revenue producing plant in the Debtors' family of companies, and it has an extremely close working relationship with Ford, which is one of the Debtors' largest and most important customers. (Compl., at ¶ 15.) As such, by definition, any harm to C&A Hermosillo will necessarily result in harm to the Debtors' estates and businesses. As noted by the *Queenie* Court, this is precisely the situation that the section 362 stay was intended to protect against.

K&E 11164713.8

### 2. Any Action Against C&A Hermosillo Will Necessarily Impact the Debtors as Guarantors of the Financing.

The fact that the Debtors have directly entered into Guaranty and Indemnity agreements with respect to the Financing of C&A Hermosillo provides yet another reason why the Debtors are likely to succeed on their claim that the Defendants' threatened conduct violates the automatic stay. Indeed, any action taken with respect to the Financing necessarily implicates the Debtors' Guaranty and Indemnity obligations. For example, if the Defendants are unable to obtain full repayment of the Financing from C&A Hermosillo, the Debtors could be liable for such amounts under the Guaranty. This is the very reason why actions against third-parties with respect to loans guaranteed by debtors are typically deemed subject to the automatic stay. *See, e.g., McCartney v. Integra National Bank North*, 106 F.3d 506, 510-11 (3d Cir. 1997).

The case of *McCartney v. Integra National Bank North,* which involved a loan to a non-debtor that was guaranteed by a debtor, is instructive. In *McCartney*, the United States Court of Appeals for the Third Circuit held that the debtors who guaranteed the loan were "necessary participa[nts] in any deficiency judgment action initiated by" the party who extended the loan. 106 F.3d at 510-11. The *McCartney* Court went on to hold, therefore, that "the bankruptcy court properly concluded that the automatic stay extended to enjoin" the deficiency judgment action against the non-debtor borrower. *McCartney*, 106 F.3d at 511. The *McCartney* Court explained that "any deficiency judgment recovery from [the non-debtor borrower] would have necessarily impacted" the debtor as guarantor of the loan. *Id.*; *see also In re Family Health Services, Inc.*, 105 B.R. 937, 942-43 (Bankr. C.D. Cal. 1989) (staying collection actions against non-debtor members of debtor HMO because judgments against non-debtors would trigger claims for indemnification from the debtor HMO).

Here, as in *McCartney*, the Debtors have directly guaranteed C&A Hermosillo's obligations under the Financing and related transactions. As in *McCartney*, therefore, the

K&E 11164713.8

Debtors are "necessary participants" in any action by Defendants against C&A Hermosillo with respect to the Financing. *See McCartney*, 106 F.3d at 510-11. Similarly, "any deficiency judgment" against C&A Hermosillo would "necessarily impact []" the Debtors. *Id.* at 511. Accordingly, as in *McCartney*, the "automatic stay [should be] extended to enjoin" the Defendants' threatened conduct with respect to C&A Hermosillo and the corresponding obligations guaranteed by the Debtors.

### 3. Any Action Against C&A Hermosillo Will Interfere with the Debtors' Reorganization Efforts.

There is yet another independent reason why the Debtors are likely to succeed on the merits of their claim for violation of the automatic stay: Absent the protections afforded by the stay, the threatened action against C&A Hermosillo would consume the time and resources, and would divert the attention of, the Debtors and their key personnel. Such a result would obviously frustrate and impede the Debtors' reorganization efforts — again, the very thing that section 362 was created to avoid.

In addition to Mr. de Irala, the executive who manages C&A Hermosillo, the time and attention of all the individuals involved in the negotiation and performance of the Financing, the Guaranty and Indemnity would be required and implicated by the Defendants' threatened conduct. Not only do these individuals devote considerable time and energy to the Debtors' ongoing restructuring efforts, but they also evaluate and implement bankruptcy-related transactions critical to the Debtors' restructuring, including material asset sales, formulation of the Debtors' revised business plan and a plan of reorganization. The involvement of these key personnel and the attendant expense would provide a considerable drain upon the Debtors' ability to reorganize.

Indeed, when confronted with similar circumstances involving actions against third-parties that implicate or interfere with a debtor's reorganization efforts, courts have not

hesitated to extend the protections of the section 362(a) stay to such disputes. *See In re Eagle-Picher*, 963 F.2d 855, 860 (6th Cir. 1992) (litigation against non-debtors stayed because it would have "needlessly divert[ed] key employees from the debtor's reorganization effort"); *In re Lazarus Burman Assocs.*, 161 B.R. 891, 899-900 (E.D.N.Y. 1993) (enjoining guaranty actions against non-debtor principals "[b]ecause the Debtors are general partnerships owned and controlled solely by the Principals, the Principals are clearly the only persons who can effectively formulate, negotiate and carry out the Debtors' plan or plans of reorganization"); *In re Steven P. Nelson*, 140 B.R. 814, 816-17 (M.D. Fla. 1992) (enjoining actions against non-debtor guarantor of debtor's obligations where the guarantor was the president of the debtor and the guarantor's services, expertise, and attention were essential to the debtor's reorganization); *Lomas Fin. Corp.*, 117 B.R. 64, 66 (S.D.N.Y. 1990) (affirming stay of claims against non-debtor personnel who were assigned to development of debtor's reorganization plan because these key personnel would be "distracted from participating in the reorganization process causing [the debtor] and its creditors both immediate and irreparable harm").

B.      **The Debtors Are Likely to Succeed on Merits of the Section 105 Claim.**

In addition to the fact the Debtors are likely to succeed on the merits of their claim for violation of section 362(a)(1), the requested temporary or preliminary injunctive relief also is warranted because the Debtors are likely to succeed on their claim under section 105(a) of the Bankruptcy Code. Section 105(a) authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). "The statutory power of the bankruptcy court to enjoin actions involving the debtor or its property is not, however, limited to section 362[]. It has been repeatedly held that 11 U.S.C. § 105 . . . 'empowers the bankruptcy court to enjoin parties other than the bankrupt' from commencing or continuing litigation." *Robins I*, 788 F.2d at 1002 (citing *Otera Mills, Inc.*

12

*v. Security Bank & Trust*, 25 B.R. 1018, 1020 (D.N.M. 1982)); *Johns-Manville*, 40 B.R. at 226 ("In the exercise of its authority under § 105, the Bankruptcy Court may use its injunctive authority to 'protect the integrity of a bankrupt's estate and . . . the Court may issue or extend stays to enjoin a variety of proceedings which will have an adverse impact on the Debtors' ability to formulate a Chapter 11 plan.") (citations omitted).[2]

In the context of section 105, "[s]uccess on the merits has been defined as the probability of a successful plan of reorganization in cases such as the one under consideration." *In re Otero Mills*, 21 B.R. 777, 779 (Bankr. D.N.M.), *aff'd* 25 B.R. 1018 (D.N.M. 1982); *see Nelson*, 140 B.R. at 816-17 (factor satisfied by the fact that there was nothing in the record to indicate that the debtor would be unable to successfully reorganize); *In re Family Health Servs., Inc.*, 105 B.R. 937, 944 (C.D. Cal. 1989) (same). To date, the Debtors have made great strides in the immense task of successfully reorganizing their companies. As described in detail in the Debtors' Third Motion for an Order Extending the Exclusivity Periods to File a Chapter 11 Plan and to Solicit Votes Thereon [Docket No. 2660], the Debtors' efforts have resulted in hundreds of millions of dollars in increased revenue and decreased costs, and marked progress toward a successful emergence from chapter 11. The likelihood that the Debtors will successfully reorganize depends upon building revenue and maintaining key customer relationships. For those reasons, C&A Hermosillo is obviously important to the reorganization effort. With C&A Hermosillo, the Debtors fully expect the continued support of their customers, suppliers, creditors, business partners and employees in their efforts to reorganize their financial affairs,

---

[2]  Section 105 is construed liberally by courts to enjoin suits that might impede the reorganization process. *See In re Adelphia Communications Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003) ("[*Johns-Manville*] and *A.H. Robins* stand for the proposition that the court can and should enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts") (internal quotations omitted); *In re Granite Partners, L.P.*, 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996)); *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987) ("Section 105(a) contemplates injunctive relief in 'precisely those instances where parties are attempting to obstruct the reorganization'") (quoting *In re Johns-Manville Corp.,* 52 B.R. 879 (Bankr. S.D.N.Y. 1985)); *see also North Star Contracting*, 125 B.R. at 370 n.1 (bankruptcy courts empowered to enjoin proceedings by or against non-debtors where necessary to protect the assets and estate of the debtor); *In re AP Indust.*, 117 B.R. 789, 802 (Bankr. S.D.N.Y. 1990).

and there is nothing in the record to the contrary. Accordingly, because a successful reorganization is probable here, the Debtors are likely to succeed on the merits of their section 105 claim.

## II.        The Debtors Face Irreparable Harm Absent Injunctive Relief.

The second element for temporary or preliminary injunctive relief — that the Debtors will suffer irreparable harm absent injunctive relief — also weighs in favor of the grant of an injunction here. Irreparable harm exists where the threatened action "would substantially hinder the debtor's reorganization effort." *Sudbury*, 140 B.R. at 466 (citations omitted); *Otero Mills*, 21 B.R. at 779. In evaluating this factor, courts have focused on, among other things, (1) whether the debtor's property would be harmed, (2) whether the debtor's interests are implicated as is the case where the debtor is a guarantor of a loan that forms the basis for a claim, and (3) whether the debtor's key personnel would be distracted by the litigation against the non-debtor. *See, e.g., Lomas Fin.*, 117 B.R. at 66-67 (irreparable harm found where third-party action would distract key personnel and possibly result in collateral estoppel); *Malm v. Goldin*, No. 92 Civ. 8012 (LJF), 1993 WL 330489, *2 (S.D.N.Y. Aug. 27, 1993) (a bankruptcy court can issue an injunction if there is a drain on the debtor's resources) (citation omitted). While the existence of any ***one*** of these types of injuries is sufficient to show irreparable harm, the Debtors have shown that they would be injured in ***each*** of these ways absent the injunctive relief sought. *See* discussion *supra* I.A.1-3.

In fact, the loss of a unique facility like the plant at C&A Hermosillo and its corresponding effect — loss of customers, loss of goodwill, and threats to a business's viability — amounts to irreparable harm as a matter of law. *See D.J. Miller & Associates, Inc. v. Ohio Dept. of Administrative Services*, 115 F. Supp. 2d 872 (S.D. Ohio 2000); *Zurn Constructors, Inc. v. B. F. Goodrich Co.*, 685 F. Supp. 1172, 1178 (D. Kansas 1988) (finding

14

that termination of a supply contract that would cause the plaintiff to incur substantial losses, fail to meet customer demands and be forced to shut down production constituted irreparable harm).

### III.     The Requested Injunctive Relief is Consistent With the Public Interest.

The consideration of the public interest also weighs in favor of granting a temporary or preliminary injunction.  In chapter 11 cases, any examination of the public interest must necessarily begin with "the unquestioned public interest in promoting a viable reorganization of the debtor."  *Robins I*, 788 F.2d at 1008.[3]  On this note, the *Hillsborough Holdings* case is instructive.  *In re Hillsborough Holdings Corp.*, 123 B.R. 1004, 1016 (Bankr. M.D. Fla. 1990).

In *Hillsborough Holdings*, the court granted the injunctive relief requested by the debtors and stayed certain actions against the executives of the debtor.  In doing so, the *Hillsborough Holdings* Court specifically noted that "[t]he Debtors operate several viable businesses and employ more than 8,600 people.  They have combined assets and liabilities of $3 billion, and had annual net revenues for fiscal year 1989 of approximately $1.2 billion."  *Id.* at 1016.  Based on these observations, the court found that the public interest was best served by staying the lawsuit against the debtor executives.  *See id*.  The logic of *Hillsborough Holdings* applies with even greater force here given that, as this Court is aware, the Debtors' business operations, number of employees, combined assets and liabilities, and annual net revenues exceed those of the debtors in *Hillsborough Holdings*.

---

[3]   *See also In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 208 (3d Cir. 1995); *In re Integrated Health Servs., Inc.*, 258 B.R. 96, 108 (Bankr. D. Del. 2001) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests"); *Am. Film*, 175 B.R. at 849 ("In the context of bankruptcy proceedings, the 'public interest' element means 'the promoting of a successful reorganization'"); *Sudbury*, 140 B.R. at 465 ("Courts have generally recognized a public interest in reorganization") (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983)); *Johns-Manville*, 26 B.R. at 428 ("[T]his Court finds the goal of removing all obstacles to plan formulation eminently praiseworthy and supports every effort to foster this goal while protecting the due process rights of all constituencies").

15

The injunctive relief sought by the Debtors will also serve the public interest — as recognized by Congress — by preserving the status quo in order to allow a troubled company with operations on a global scale to pursue a successful reorganization. A successful reorganization, unhindered by the Defendants' threatened conduct and the related costs in time and expense, will preserve a substantial number of jobs, sustain the economic vitality of several communities, and ensure the continued valuable services and products that the Debtors provide to their customers. Indeed, the Debtors and their non-debtor subsidiaries and affiliates manufacture products that are included in approximately 90% of the vehicles produced by Daimler Chrysler, Ford, and General Motors.

**IV.     The Balance of Equities Favors Issuance of an Injunction.**

The fourth and final element to be considered at the temporary or preliminary injunction stage — the balance of the equities — strongly favors the granting of an injunction here. As discussed above, the harm to the Debtors absent injunctive relief is obvious: the Defendants' threatened actions will harm one of the Debtors' most significant and important operating facilities, jeopardize the Debtors' business relationships with Ford, and frustrate the Debtors' ability to focus on their reorganization efforts. In contrast, the Defendants will suffer no harm at all should an injunction issue.

Indeed, the Defendants voluntarily waited for months — and more than one year from the Petition Date/supposed Event of Default — before threatening to take action against C&A Hermosillo and the Debtors. Moreover, the Defendants got around to taking such action only *after* the Debtors had initiated a separate adversary proceeding against GECC on an unrelated financing transaction. Clearly, the Defendants sensed no urgency in pursuing these claims and ordering the Defendants to hold-off a bit longer before commencing these actions will hardly cause any real hardship to Defendants or the rest of the GE family.

16

Likewise, given that the Debtors are not seeking to permanently enjoin Defendants' actions, any delay associated with the injunctive relief requested will in no way compromise the Defendants' claims or add to their burdens. *See Johns-Manville*, 26 B.R. at 430. In short, whereas a denial of injunctive relief would cause irreparable harm to the Debtors' business and reorganization efforts, the granting of such relief will merely mean that Defendants must wait for some limited period of time before commencing actions that, for the previous year, the Defendants were in no rush to pursue. When viewed in this proper context, the balance of hardships tips decidedly in favor of injunctive relief.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that this Court (a) issuing a temporary restraining order and preliminary injunction enjoining the Defendants from taking any action with respect to the asset, stock, or other property interest of the Debtors and one of its non-Debtor subsidiaries, C&A Hermosillo, pending final disposition of the Debtors' underlying claims for (i) violation of the automatic stay of section 362 and (ii) in the alternative, an injunction pursuant to section 105 and (b) granting such other and further relief as is just and proper.

K&E 11164713.8

Dated: May 31, 2006

**KIRKLAND & ELLIS LLP**

*/s/ Marc J. Carmel*
Richard M. Cieri (NY RC 6062)
Joseph Serino, Jr. (JS 9911)
Matthew Solum (MS 1616)
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

-and-

David L. Eaton (IL 3122303)
Ray C. Schrock (IL 6257005)
Marc J. Carmel (IL 6272032)
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

-and-

**CARSON FISCHER, P.L.C.**

Joseph M. Fischer (P13452)
4111 West Andover Road
West - Second Floor
Bloomfield Hills, Michigan 48302
Telephone:  (248) 644-4840
Facsimile:  (248) 644-1832

Co-Counsel for the Debtors

18